Western Valve Company, Appellee, v. Quay-Dakin Company, Defendant, and A. E. & F. A. Wells, Garnishees.

Sykes Steel Roofing Company, Appellee, v. Quay-Dakin Company, Defendant, on appeal of A. E. & F. A. Wells, Garnishees, Appellants.

## Gen. No. 16,927.

GARNISHMENT—*admission of indebtedness.* Though a subcontractor cannot recover a per cent. of the price retained by the original contractor when attachment writs are served on such contractor by persons who furnished materials to said subcontractor, because of an agreement whereby a per cent. was to be retained if claims against the subcontractor existed, yet if the contractor, after service of the writs, without liens being established, pays an amount larger than the per cent. retained to others for labor and materials furnished to the subcontractor before the service of the writs, such payment is an admission of indebtedness by the contractor when the writs were served, and judgment against the contractor for the per cent. retained is proper.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913.

**Statement by the Court.** Appellee brought separate actions of *assumpsit* against the Quay-Dakin Com-

pany in the Circuit Court, sued out writs of attachment in aid and summoned A. E. and F. A. Wells, the appellants here, as garnishees. The usual formal interrogatories were filed, requiring the garnishees to answer whether they had in their possession at the date of the service of the writ, any money, credits, etc., of the principal defendant, or were indebted to it, or had property belonging to it, etc., to each of which interrogatories the answer was "No." The fifth interrogatory was whether before, etc., they had entered into any contract with the Quay-Dakin Company, and the sixth was, that if they answered that they had, "State the substance of such contract, the amounts paid thereon and the amounts due or to become due thereon." The answer to the fifth interrogatory was "Yes" and to the sixth: "Nothing due on any such contract at the time of the service of the writ." To the answers the statutory traverses were filed. On the trial of the cause by the court there was a judgment in favor of the Quay-Dakin Company against the garnishees for $1,465.71, $624.84 thereof for the use of the Western Valve Company and $264.31 thereof for the use of the Sykes Steel Roofing Company, and the garnishees appealed. As to the evidentiary facts there is no material controversy. The garnishees contracted with the owner to erect a building, for which they were to be paid $400,000. The Quay-Dakin Company contracted with the garnishees to put in the steam heating plant for $9,500. They installed the plant and did some extra work, making the amount the Company was to be paid $9,565.71, on which was paid $8,100, leaving a balance due said Company of $1,465.71 when it fulfilled its contract, and this sum was in the hands of the garnishees when the writs of appellee were served on them.

The contract between the Quay-Dakin Company and the garnishees provided that eighty-five per cent. of the contract price should be paid as the work pro-

gressed and fifteen per cent. retained under the following provisions:

"It is specially understood and agreed that the amounts to be paid from time to time, shall in no case exceed eighty-five per cent. of the value of the work done and material furnished, as shown by said certificates, the remaining fifteen per cent. of said value to be retained by said first party, as part security for the faithful performance hereof, and not to be paid until the expiration of thirty days after the perfect completion of the building, and the payment of all claims for labor and material furnished, and when all of the drawings and specifications have been returned; * * * that the Quay-Dakin Company shall leave said work complete and perfect, free from expense to the first party * * * and shall, if requested by said first party, furnish from time to time sworn statements of all indebtedness for materials and labor furnished, used or spent upon said work. * * * And it is further agreed that if at any time during the progress of said work said party of the second part shall allow indebtedness to accrue for labor or materials which may become liens on said building or the ground on which it stands, said party of the first part may refuse to make payments as hereinbefore agreed until satisfactory evidence has been furnished that said indebtedness has been discharged, and if such evidence is not furnished immediately within the space of ten days after a demand therefor in writing, the party of the first part may discharge such indebtedness and deduct the amount required therefor from the amount agreed to be paid herein, from the said party of the second part, or at their option may declare this entire agreement null and void, and may take possession of such work and complete the same, and in such case the said party of the second part hereby agrees to pay all loss or damage occasioned thereby. * * * And it is further agreed that if at any time, during the progress of said work, said party of the second part shall allow indebtedness to accrue for labor or materials which may become liens on said building or the ground

on which it stands, said party of the first part may refuse to make the payments as hereinbefore agreed until satisfactory evidence has been furnished that said indebtedness has been discharged.''

The Quay-Dakin Company did not pay for all the materials that went into the heating plant, but owed the American Radiator Company $2,866.67, the John Davis Company $307.12, and appellees the amount of their respective judgments for such materials. The Radiator Company and the John Davis Company filed bills for mechanic's liens, but the Quay-Dakin Company was not served by publication or otherwise, and appellants claim nothing by virtue of such proceedings. The attachment writs were served on appellants April 27, 1901. November 15, 1901, the garnishees paid to the American Radiator Company $1,400 to apply on its claim against the Quay-Dakin Company, and January 2, 1902, paid to the John Davis Company $300 to apply on its claim against the Quay-Dakin Company.

GOODRICH, VINCENT & BRADLEY, for appellants; JOSEPH M. GRIFFEN and DAVID S. EISENDRATH, of counsel.

EASTMAN & WHITE, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

In Wilcus v. Kling, 87 Ill. 107, Kling entered into a written contract with Wilcus and Vinsburg to build for them two buildings according to the plans, etc., of Architect Froyer, who was to issue certificates from time to time, reserving twenty per cent. of the contract amount until the final completion of the buildings, when on the exhibition by the contractor of all bills, the architect was to issue a final certificate for the balance of the twenty per cent. The architect never issued a certificate for the twenty per cent. The

owners were garnisheed and after the service of the
writ paid out two thousand dollars on orders drawn
by Kling for materials and labor on the building ap-
propriated before the service of the writ.    It was
held that the payment of such orders was an admis-
sion by the garnishees that they were indebted to
Kling at the time the writ was served, and that be-
cause of such admission of indebtedness the garnish-
ees were liable although Kling could not have recov-
ered because no certificate had been issued by the
architect.

We think the decision in that case must control the
decision in this.    Conceding that the Quay-Dakin
Company could not, at the date of the service of the
writs, have recovered because there then were unpaid
claims against that Company for labor and materials
appropriated in the performance of its contract with
the garnishees, for which mechanic's liens might have
been established, the garnishees, without any lien hav-
ing been established, paid for labor and materials fur-
nished to the Quay-Dakin Company before the serv-
ice of the writs, more than the fifteen per cent. of the
contract price retained by them under the terms of
their contract with the Quay-Dakin Company.    This,
under the decision in Wilcus v. Kling, *supra*, was,
we think, an admission by the garnishees of indebted-
ness to the Quay-Dakin Company at the time of the
service of the writs.    It was because of their admis-
sion of indebtedness that the owners of the building
were held liable as garnishees in Wilcus v. Kling, al-
though the principal defendant, the contractor, could
not have maintained an action because of his failure
to present an architect's certificate.

We think that under the rule announced in Wilcus
v. Kling the garnishees were properly held liable be-
cause of their admission of indebtedness, and the judg-
ment of the Circuit Court is affirmed.

*Affirmed.*