In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-4041

THEODORE F. GRADEL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

PIRANHA CAPITAL, L.P., *et al.*,

*Defendants*,

and

ROBB EVANS & ASSOCIATES, L.L.C.,

*Intervenor-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 78—**Wayne R. Andersen**, *Judge*.

_____

SUBMITTED MARCH 18, 2007—DECIDED JULY 25, 2007

_____

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal presents an issue
concerning the control of property in parallel proceedings.
Investors in a hedge fund called Piranha Capital sued
Piranha in an Illinois state court, claiming violations of
federal securities law as well as state law. By serving the
summons on another company, Pershing LLC, the plain-

tiffs automatically attached $1 million held in Piranha's account with Pershing. 735 ILCS 5/4–126; *Maplehurst Farms, Inc. v. Greater Rockford Energy & Technology Co.*, 521 N.E.2d 1270, 1272 (Ill. App. 1988). Piranha removed the case to the federal district court in Chicago, and, having removed, filed a motion in the district court to vacate the attachment. But when no one from Piranha showed up to argue the motion, the district court denied it, and so the attachment remained in effect. 28 U.S.C. § 1450. The investors went on to obtain a judgment for almost $1 million in the district court proceeding, and they attempted to collect it by filing a motion in that court to order Pershing to turn over to them the money in Piranha's account with Pershing.

While that motion was pending, the Commodity Futures Trading Commission sued two advisers of Piranha in the federal district court for the Northern District of California, charging them with violations of the Commodity Exchange Act for causing improper diversion of assets of the investors in Piranha to the defendants. The court issued a preliminary injunction against the commencement, prosecution, litigation, or enforcement of any suit with respect to Piranha. It also appointed Robb Evans & Associates as a temporary receiver for matters relating to Piranha, to recover as much money as possible for the investors. The receiver traced some of the assets to the account at Pershing and directed Pershing to transfer the money in the account to him. Discovering that the funds had already been attached by the plaintiffs in the Chicago suit, the receiver intervened in that suit (now in the collection phase) and moved to vacate the attachment. He also opposed the plaintiffs' pending motion for turnover.

The district court in Chicago denied the motion for turnover on the ground that the injunction entered in

California, which was directed against "the Defendants, and all other persons and entities," bound the plaintiffs because they were included in "all other persons and entities." In the same order the district court also granted the receiver's motion to vacate the attachment, on the ground that the receiver "is best equipped to undertake the orderly administration of the assets of the Piranha fund."

The plaintiffs appeal from the order denying turnover and vacating the attachment. The receiver asks us to dismiss the appeal on the ground that it is moot because the plaintiffs did not try to stay the district court's denial of the turnover motion and as a result Pershing has transferred the $1 million to the receiver, who argues that since he received the money as an agent for the Northern District of California the money has been withdrawn from the control of the district court in Chicago. *Federal Savings & Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980), indeed holds that when a court-appointed receiver takes property, it is held by the district court that appointed him. But that is a matter of custody; it does not affect the attachment, or, stated otherwise, the beneficial ownership of the property, or other rights in it. And so it does not extinguish the plaintiffs' interest in the property. But without the attachment that the district court has vacated, the judgment the plaintiffs obtained in the district court in Chicago did not create a judgment lien—a lien that would relate back to the date of the attachment and thus potentially give them priority over Piranha's other creditors. *Marchant v. Artists Embassy, Inc.*, 166 N.E.2d 311, 314-15 (Ill. App. 1960); *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50 (1950) (California law); *Bjork v. United States*, 486 F.2d 934, 939 n. 8 (7th Cir. 1973). So the appeal, seeking restoration of the attachment, is not moot.

But can a court in Chicago issue an order that will affect funds held by a court in California? In this case it can, because the receiver intervened in the Chicago suit and by doing so submitted himself to the jurisdiction of the court in which that suit was pending. *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1248 (11th Cir. 2006); *County Security Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002). He can therefore be ordered to acknowledge the plaintiffs' claim to the funds. What is more, he can and should be ordered to turn over to the plaintiffs the money seized from Piranha's account with Pershing, since "as between two courts of concurrent and coordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property. . . [namely the $1 million in the Pershing account] is entitled to retain it without interference and cannot be deprived of its right to do so." *Harkin v. Brundage*, 276 U.S. 36, 43 (1928); see *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 96-97 (7th Cir. 1987); *Carter Oil Co. v. McQuigg*, 112 F.2d 275, 281 (7th Cir. 1940); *Madewell v. Downs*, 68 F.3d 1030, 1041 n. 13 (8th Cir. 1995).

This case is like *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1260 (7th Cir. 1977). The plaintiff in a suit in the federal district court in Chicago moved for a preliminary injunction to restrain the defendants from prosecuting a suit in the Northern District of California based on a claim that was a compulsory counterclaim in the Illinois suit. The district court in Chicago granted the motion but then turned around a month later and vacated it, and we held that that was an abuse of discretion. *Id*. at 1265. Likewise here. The district court in Chicago obtained jurisdiction over the plaintiffs' case and with it control of

the Piranha account in Pershing, and there was no basis for its relinquishing that control just because another suit had been filed elsewhere. The California suit was not filed until six months after the plaintiffs in Chicago had attached the money held by Pershing, and the final judgment later entered by the district court in Chicago perfected the plaintiff's judgment lien as of the date of the attachment. Even if the California proceeding were a bankruptcy proceeding, the plaintiffs would in all likelihood be entitled to enforce their Chicago judgment lien, pursuant to the principle that (with immaterial exceptions) liens pass through bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *Long v. Bullard*, 117 U.S. 617 (1886); *In re Paeplow*, 972 F.2d 730, 735 (7th Cir. 1992) ("creditors are not prohibited from executing a judgment lien against a discharged debtor's property, as long as the judgment was obtained before discharge"); 4 *Collier on Bankruptcy* § 524.02[1] (Alan N. Resnick et al., eds., 15th ed. rev. 2007). The trustee in bankruptcy would assume the position of a hypothetical lien creditor at the moment of the bankruptcy filing, 11 U.S.C. § 544(a), and the recipient of a judgment lien perfected well before 90 days prior to the filing, thus eliminating the possibility of a voidable-preference action, § 547(b)(4), would trump the trustee's claim. But that is neither here nor there. The proceeding in California is not a bankruptcy proceeding, and the receiver does not argue for a departure from the ordinary rules governing priority between proceedings in two courts when the same property is at issue in both proceedings.

Although the Commission has not sought to participate in this proceeding, we invited it to express its views concerning the possible impact of this appeal on the

Commission's suit in California, specifically whether the relief sought by the plaintiffs in this appeal would if granted adversely affect the Commission's suit. The Commodity Futures Trading Act authorizes the Commission to promulgate regulations governing the liquidation of commodity brokers that are in Chapter 7 bankruptcy, 7 U.S.C. § 24(a)(3); 11 U.S.C. §§ 761-767, but the Commission's statement does not cite any of those statutes, or any other source of authority to regulate the insolvency of Piranha or of the advisers (assuming they are insolvent too) that the Commission sued in California. The Commission contends only that it would be "unfair" for the investors in the Chicago suit to enjoy a priority over other claimants to the proceeds of the California receivership; it suggests no basis in any statute, regulation, or judicial decision for the contention. Stated otherwise, no federal interest in the relative priorities of different claimants to Piranha's assets has been shown.

The district court's order vacating the attachment and denying turnover is therefore reversed with instructions to reinstate the attachment and order the receiver to turn over to the plaintiffs the money the receiver obtained from Piranha's account with Pershing.

REVERSED AND REMANDED WITH DIRECTIONS.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*